# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:21-cr00719-JEB** |
| | : | |
| **CYNTHIA BALLENGER, and** | : | |
| **CHRISTOPHER PRICE,** | : | |

**MOTION FOR RECONSIDERATION OF ORDER DENYING REFUND Of FEES AND RESTITUTION FOLLOWING ORDER OF VACATUR OF JUDGMENT BY THE D.C. CIRCUIT**

Former Defendants Cynthia Ballenger (Cynthia Price) and Christopher Price (together the Prices), through undersigned counsel, respectfully move for reconsideration of this Court's June 30, 2025, Order [ECF 176], which denied the Prices' motion for a refund of criminal assessments and restitution previously paid under a judgment of conviction that has been vacated. The Court properly exercised ancillary jurisdiction to decide this post-conviction matter, but committed clear legal error in concluding that the vacatur did not entitle the Prices to a refund. Reconsideration is necessary to conform the Court's rulings with controlling law, the mandate of the D.C. Circuit, the Due Process Clause of the Constitution and to prevent a Taking under the Fifth Amendment. Revision is also appropriate to prevent manifest injustice. Counsel for the Prices has informed counsel for the government and the government states no position on the motion.

The Prices plans to file today a protective Notice of Appeal from the Court's June 30, 2025, Order [ECF 176] to preserve their appellate rights. This Motion to Reconsider is submitted to preserve the district court's opportunity to revisit its ruling in light of additional legal authority

and clarification of fundamental legal principles regarding vacatur, supported by substantial relevant case law and citation.

The Prices acknowledge that filing a notice of appeal initiates the process by which jurisdiction is transferred to the Court of Appeals. See *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). However, courts have long recognized that a district court retains jurisdiction to resolve timely motions for reconsideration—particularly before the record has been transmitted. See *United States v. Dieter*, 429 U.S. 6 (1976) (per curiam); *United States v. Ibarra*, 502 U.S. 1, 7 (1991). This motion is therefore submitted in good faith and without intent to interfere with or delay the appellate process.  The Prices hope this will either persuade the Court or, at least, provide a comprehensive record of the issues for judicial review, including in light of the recent opinion issued June 26, 2025, in *Hewitt v. United States*, 606 U.S. ___, 144 S. Ct. 2713 (2025).

## I.    Procedural Background

**Procedural Background**

The Prices were convicted following a bench trial of four misdemeanor offenses related to the events at the U.S. Capitol on January 6, 2021. The Prices were sentenced on September 29, 2023.  Cynthia was sentenced to four months incarceration followed by nine months of supervised release and ordered to pay a $70 special assessment and $500 in restitution to the Architect of the Capitol. Christopher was sentenced to 45 days incarceration followed by nine months of supervised release and ordered to pay a $70 special assessment and $500 in restitution to the Architect of the Capitol.

Cynthia and Chris each filed a timely notice of appeal on October 26, 2023. The Prices filed their brief on February 7, 2024, and a reply brief on May 6, 2024.  Oral argument was held September 16, 2024. While appeal was pending, and on January 25, 2025, President Trump issued Proclamation No. 10887. This Proclamation document contains two separate provisions: (1) a pardon for individuals convicted of non-violent federal offenses related to January 6, and (2) a directive that the Department of Justice to not further pursue January 6th cases.

On January 29, 2025, in light of this shift in enforcement policy, the United States filed an unopposed motion in the D.C. Circuit titled *Appellee's Unopposed Motion to Vacate Convictions and Remand for Dismissal* (D.C. Cir. No. 23-3198, 23-3199, Doc. #2097286).  That motion states, in part, "In the Executive Order issued on January 20, 2025, President Trump has directed the Attorney General to pursue dismissal with prejudice of all pending cases against individuals for their conduct related to the events at or near the United States Capital on January 6, 2021." The government motion to vacate further states "[t]he United States respectfully submits that Rule 48(a) provides the appropriate procedural mechanism …"

On February 4, 2025, the United States Court of Appeals for the D.C. Circuit vacated the judgments of this Court for both Defendants in the instant case See ECF 171, 171-1, 172; and ECF 172-1. USCA Case Nos. 23-3198 and 23-3199.

 The orders of the D.C. Circuit are in plain language:

Upon consideration of the unopposed motion to vacate convictions and remand for dismissal, it is

ORDERED that the judgment of the district court be vacated and the case be

remanded with instructions to dismiss the case as moot. *See United States v. Schaffer*

240, F.3d 35, 37-38 (D.C. Cir. 2001)(en banc).  [ECF 171-1 and 172-1]

Note that the reference to *Schaffer* is in the actual order of the D.C. Circuit. This Court followed

that instruction and entered orders of dismissal on February 5, 2025.

Prior to these rulings, each Defendant had paid $500 in restitution and a $70 special

assessment under the now vacated judgments of this Court. These payments were collected by

the Clerk of Court. Upon information and belief, the $500 restitution assessment for each

Defendant was disbursed in whole or in part to the Architect of the Capitol, an agency of the

United States government.

On March 14, 2025, the Prices filed a *Motion for Refund of Restitution and Criminal*

*Assessment Payments* [ECF 173], arguing that the vacatur of their convictions extinguished the

legal basis for any criminal financial penalties and compelled return under both Due Process and

the Court's ancillary jurisdiction. Attached to the motion were official government receipts of the

amounts paid by Cynthia Ballenger (Price) [ECF 173-1] and Christopher Price ECF 173-2]. The

Prices attached a letter to the Clerk of Court, seeking to exhaust administrative and dated March

1, 2025. [ECF 173-3].  Another filing includes the email response of the Finance office of the

Court denying the request and indicating the Prices should file with this Court if the Prices

believe they were denied in error. [ECF 105-3].  As required, the motion included the text of a

proposed order.  [ECF-173-5]   The United States filed its response on April 11, 2025, titled

*Government's Response to the Defendant's Motion for Reimbursement of Fees and Restitution*

[ECF 175]. The government response effectively supports the motion of the Prices for a refund on the same or very similar grounds as stated by the Prices.

Note that in the Hector Santos-Vargas Case, at the request of Judge Moss, the government filed a supplemental response on May 9, 2025, titled *Government's Supplemental Response to Motion for Refund of Special Assessments, Fine, and Restitution* [Santos Vargas ECF 110].

On June 30, 2025, the Court issued its *Order* [ECF 176], denying the refund motion. The government and the Prices agreed that refund was proper. Both the Prices and the government argued that *Nelson v. Colorado*, *581 U.S. 128* (2017), controlled and that the issue was implementing the full effect of the D.C. Circuit vacating the judgment and not the effect of a pardon. Nevertheless, this Court denied the motion, relying on *Knote v. United States*, *95 U.S. 149* (1877) and with reference to the memorandum and opinion of Judge Moss in United States v Santos Vargas , No 21-47 (D.D.C). (The Moss Opinion) [Santos Vargas ECF No.111].  This Court's brief opinion and reference focuses on the power of the pardon and the limitations of that power. The Prices now respectfully move the Court to reconsider that ruling.

## II. Legal Grounds for Reconsideration

### A.  The Court Properly Exercised and May Continue to Exercise Ancillary Jurisdiction on This Matter

The Court and the Moss Opinion correctly recognized the authority of the district court to adjudicate this matter under its ancillary jurisdiction and that the case presents a justiciable controversy. See Moss Opinion footnote 3. See *United States v. Wilson*, 540 F.2d 1100, 1103–04 (D.C. Cir. 1976); *Morrow v. District of Columbia*, 417 F.2d 728 (D.C. Cir. 1969), and *Doe v.*

*Webster*, 606 F.2d 1226 (D.C. Cir. 1979) and *United States v. Windsor*, 570 U.S. 744, 758 (2013). Courts routinely use ancillary jurisdiction to resolve disputes concerning property and monetary penalties following the termination of a criminal case. That foundational conclusion supports this Court's ability to correct its own legal error now.

The Prices elaborate on *Wilson* on a few items relevant to the Court's jurisdiction but also to the substantive argument below.   *Wilson* states:

> This case presents the question of the jurisdiction and **duty** of a federal district court in a criminal case to return to the defendant that property seized from him in the investigation but which is not alleged to be stolen, contraband, or otherwise forfeitable, and which is not needed, or is no longer needed, as evidence. We hold that the district court has both the jurisdiction and the **duty** to ensure the return of such property. *Id.* at 1101. (emphasis added)

*Wilson* clearly includes in the term "property" a $1,000 fine paid by Wilson. *Id.* That amount was part of a sum of $2,550 that was issue in the case.  The D.C. Circuit ordered the district court to provide the full amount under the duty of the district court to effectuate return.  *Wilson* notes: "Appellant here argues his right to the money under Fed. R. Crim. P. 41(e) and a due process right to have his property returned". *Id* at 1102. As part of the Wilson courts analysis of ancillary jurisdiction the D.C. Circuit states:

> As to the fourth criterion, it is fundamental to the integrity of the criminal justice process that property involved in the proceeding, against which no Government claim lies, be returned promptly to its rightful owner. *Id.* at 1103.

Again, the D.C. Circuit considers return of a fine as property involved in the proceeding that must be returned promptly to its **rightful owner** where the government has no claim.

It is important to properly characterize the motion for the Prices. The Prices have not claimed, and have no opinion on, the scope of the Pardon in the Presidential Proclamation. The Prices have offered no opinion on what is or what is not required to accept the pardon. The argument the Prices make is simply that the D.C. Circuit vacated the judgment which formed the basis of restitutions and criminal assessments. The Prices argue the vacatur—not the pardon--provides entitlement to the return of restitution and criminal assessments which flowed from the vacated judgment. The Prices further argue that Due Process and case law mandates that the procedure for return of such restitution and assessments be reasonable and effective. The Prices have explained the problem they have encountered and believes the proper legal finding and order from this Court may advance his objectives. In this latter regard, and as discussed below, The Prices did not limit their request as an order specific to the Clerk of Court but rather to any agency that may have money.

### B.  The Court's Opinion Commits Fundamental Error by Claiming an Article II Pardon Limits or Modifies the Effect of an Article III Order of the DC Circuit to Vacate the Judgment

Neither the government nor the Prices have argued that a pardon removes a conviction or criminal assessments paid under such conviction. This Court and the *Moss Opinion* argue a non-sequitor. The D.C. Circuit vacated the entire judgment of the district court. As a matter of established law, vacating a criminal judgment, removes the bases of any fines or restitution from the vacated judgment. Where there is not a basis, as is the case with vacatur, the government has no right to the paid amounts and defendants have a complete right to return. This Court and the *Moss Opinion* appear to take the position that when the D.C. Circuit says "vacate the judgment", the district court argue there can be different flavors of that statement with different legal effects. The Court and the *Moss Opinion* inherently argue

that Article II Pardon power, or the effect of an Article II Pardon, limits the meaning or effect

of the Article III Court decision to vacate a judgment. As discussed below, Supreme Court

case law provides that vacatur is appropriate where substantial mootness issues arise on

appeal and a decision is not final. Moreover, it is not for this Court to look at the reasons for

the clear statement of the D.C. Circuit.  That clear statement has the same legal meaning

regardless of the rationale behind the vacatur. This Court has violated the clear mandate of

the D.C. Circuit, *Nelson*, *Wilson* and the fundamental Constitutional principles therein.

Where the D.C. Circuit vacates the judgement that equals an entitlement of the defendants

that paid fines, restitution, or assessments based on that judgment.  Due Process requires a

reasonable mechanism of return.

### 1.  The D.C. Circuit Vacated the Entire Judgment in the Case; This Court's Opinion Is in Conflict and A Violation of That Mandate

The D.C. Circuit's mandate did not reserve any part of the district court judgment, nor

did it specify a limited vacatur. The order is plain --"ORDERED that the judgment of the district

court be vacated …" The reference to *Schaffer* in the Order has no bearing to limit the plain

language that the judgment of the district court be vacated. Regardless, *Schaffer* states the same

broad impact in the specific case where a pardon is part of the fact pattern:

> The parties agree that the pardon rendered moot the ongoing appeals.  They are quite
>
> right on this point. Accordingly, under well-established principles governing the
>
> disposition of cases rendered moot during the pendency of an appeal, we hereby vacate
>
> the disputed panel decision in this case and all underlying judgments, verdicts, and
>
> decisions of the District Court. *Schaffer*, 240 F.3d at 35.

Notice the totality of the statement in *Schaffer*. Notice the reason for the vacatur is mootness based on a pardon while the party was on appeal. 28 U.S.C. § 2106 grants federal appellate courts the authority to "affirm, modify, vacate, set aside, or reverse" any judgment, decree, or order, and to "remand the cause and [to] require further proceedings to be had as may be just under the circumstances." The D.C. Circuit vacated the judgment including all components of the judgment under that authority. A district court lacks discretion to modify, circumvent, or disregard a mandate from the court of appeals. See *Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304, 306 (1948); *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895).

The *Moss* Opinion tries to make a distinction for the plain of the language of the D.C. Circuit stating that "The vacatur of a conviction for reasons other than a pardon generally renders the conviction void *ab initio*." *Moss Opinion* at 6. This is an unwarranted suggestion that the judgment in the instant case is, in some manner, not fully vacated or a second-class vacatur. The D.C. Circuit need not recite the phrase *ab initio* for vacatur to operate with the full and ordinary effect. Judicial vacatur, by long-established precedent, renders a judgment void from inception— unless a limiting condition is expressly stated. The statement of the D.C. Circuit and the statements in *Schafer* are clear.

The Supreme Court's recent decision in *Hewitt v. United States*, 606 U.S. ___, 144 S. Ct. 2713 (2025), reaffirms longstanding legal principles regarding the effect of vacatur.[1] While *Hewitt* interprets the timing provisions of the First Step Act, the decision turns on a broader, foundational proposition: that a vacated judgment is *void ab initio*—it has no legal effect from the start. *Hewitt v. United States*, 606 U.S. ___, 144 S. Ct. 2713 (2025), *Slip Op.* at 10-11. This

---

[1] A copy of the slip opinion is available at: https://www.supremecourt.gov/opinions/24pdf/23-1002_1p24.pdf

principle has profound consequences for fines, restitution, and other monetary penalties. Once a judgment is vacated, the government no longer retains any valid legal claim to the property it collected under that judgment. In this sense, *Hewitt* provides direct support for the Price's: that the Court has both the authority and the duty to order the return of unlawfully retained funds, without requiring a separate process or statutory invention. This authority existed before *Hewitt*—but its reaffirmation the day before the Court's June 27, 2025 ruling makes reconsideration all the more appropriate.

> One such presumption is that vacated court orders are void *ab initio* and thus lack any prospective legal effect. *See United States* v. *Ayres*, 9 Wall. 608, 610 (1870) ("[V]acating the former judgment . . . render[s] it null and void, and the parties are left in the same situation as if no trial had ever taken place in the cause"). By operation of legal fiction, the law acts as though the vacated order never occurred. *Hewitt Slip Op.* at 10-11.

While *Hewitt* interprets a statute, Hewitt addresses the meaning of vacatur including regarding the timing question of the First Step Act:

> Thus, if Congress were to pass a stimulus provision that gives checks to any small-business owner who "has not been convicted of fraud," an owner would not be rendered ineligible on the basis of a fraud conviction that was overturned on appeal. While the owner *had* been convicted of fraud, that judgment was invalidated and therefore became legally inoperable. In other words, that vacated conviction is subsequently treated as no conviction at all. See *North Carolina* v. *Pearce*, 395 U.S. 711, 721 (1969) (verifying that vacatur causes a conviction to be "wholly nullified and the slate wiped clean").[citation to footnote 9] *Hewitt Slip Op.* at 12.

Footnote 9 in the *Hewitt* opinion notes:

> The dissent erroneously suggests that, under our precedents, a vacated sentence continues to exist as a historical fact and thus retains prospective legal effect. [Citation omitted] But the cites do not support that contention. *Hewitt* Slip Op. at 11, n. 9.

*Hewitt* states:

> Background principles regarding the legal effect of vacatur confirm that retroactivity does not exclude from its ambit those whose prior sentences have been vacated. . . . A judge would thus correctly conclude at resentencing that, if an offender's past sentence has been vacated, a sentence 'has not been imposed' upon that offender for purposes of the First Step Act; hence, the court can impose a new sentence today. *See Pepper v. United States*, 562 U.S. 476, 507 (2011) (vacatur of a criminal sentence "wipe[s] the slate clean"). *Hewitt Slip Op.* at 10.

The Moss *Opinion* tries to advance the timing argument of *Knote* that a pardon does not create an entitlement, or remove the entitlement of the government, to fines already paid.  *Hewitt* makes clear that it is the nature of vacatur that is the difference:

> That is so, in their view, because the Act applies only "if a sentence for the offense has not been imposed as of " the Act's enactment date, and a sentence "*has* . . . been imposed" upon that defendant as a matter of historical fact. 132Stat. 5222 (emphasis added). But based on the text of §403(b) and the **nature of vacatur**, we conclude that a sentence has been imposed for purposes of that provision if, and only if, the sentence is extant—*i.e.*, **has not been vacated**. (emphasis added) *Hewitt Slip Op.* at 6.

Vacatur of a conviction erases the conviction.  The principle that vacatur renders a conviction void *ab initio* is not conditional and does not depend on the reason for vacatur. As the Fourth Circuit held, "the question is whether the conviction was vacated, rather than why the conviction was vacated." *United States v. Ajrawat*, 738 F. App'x 136, 139 (4th Cir. 2018). In *United States v. Coddington*, 802 F. App'x 373 (10th Cir. 2020), the government conceded that restitution must be vacated once convictions are vacated. The Ninth Circuit in *United States v. Robertson*, 980 F.3d 672 (9th Cir. 2020), and the Second Circuit in *United States v. Brooks*, 888 F.3d 95 (2d Cir. 2018), reached the same conclusion. The Third Circuit has emphasized: "A vacated sentence is void *ab initio*, as if it had never happened." *United States v. Mitchell*, 38 F.4th 382, 392–93 (3d Cir. 2022) (Bibas, J.). The Second Circuit similarly held in *United States v. Libous*, 858 F.3d 64, 69 (2d Cir. 2017), that abatement ab initio triggered refund obligations, without requiring any explicit ab initio language.

The Moss Opinion states: "[t]he vacatur of a conviction for reasons other than a pardon generally renders the conviction void *ab initio*." *Moss* Opinion at 6. It is hard to know what to make of this statement.  The statement implies that a vacatur of a conviction, such as that in *Schaffer,* and the instant case, does not have the same force and effect as a vacatur for other reasons.  There is no basis for this statement. Such a construct is in direct contravention of the explicit language of the D.C. Circuit Order, the language in *Schaffer,* and the plethora of case law cited in this memorandum.  In *Wilson*, the D.C. Circuit explicitly held that return of a fine was the return of property of a criminal defendant. Case law defines vacatur as complete, unless there is a statement of limitation.

**2. Neither the Rules of Criminal Procedure, Rules of Appellate Procedure Nor or 28 U.S.C. § 2106 Appellate Authority Support Different Categories from a Judicial Order to Vacate the Judgment**

Here the Prices make the simple point that there is no set of different definitions to the term "vacate". A court can apply vacate to different parts of judgment, like one count versus others. In the instant case, the D.C. Circuit is clear with an Order that "the judgment of the district court be vacated." No part remained intact. Nothing under Rule 48(a) of Federal Criminal Procedure or 28 U.S.C. § 2106 identifies different definitions of vacatur that might carry distinct legal consequences. Judicial vacatur, regardless of the procedural source, operates with full legal effect. "Vacate" means the judgment is nullified. Under 28 U.S.C. § 2106, "[t]he Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances. (emphasis added). Federal Rule of Criminal Procedure 33 provides specific authority to a district court to "vacate any judgment". Again, while a court could vacate somethings, the term vacate has the same meaning – to nullify. There is no examples under the rules where there are two or more versions of "vacate". If a part of a judgment is vacated there may be different impacts. Vacating a judgment may have downstream effects on other legal matters. This Court advances an untenable proposition to look behind the clear term, ask the reason, and ascribe a different legal impact. The Court opinion in the instant case identifies nothing in the rules or underlying authorities of the Appellate Court that support that. Nor is there authority in the district court to change the meaning of the term when an Appellate Court exercises that authority.

The Supreme Court has further made clear a district court judgment cannot stay in effect when there is a vacatur under the *Munsingwear* line of cases. *See Great Western Sugar Co. v. Nelson* 442 U.S. 92 (1972). In *Great Western Sugar* reviewed a 10th Circuit decision and the Supreme Court states:

> The Court of Appeals has proceeded on the assumption that the case is moot, and has dismissed the appeal for that reason. It has nonetheless stated that the judgment of the District Court shall remain in effect, a statement totally at odds with the holding of *Duke Power.* The reasons for not allowing the District Court judgment to remain in effect when the fact of mootness had been properly called to the attention of the Court of Appeals were fully stated in [*United States v. Munsingwear, Inc.* 340 U.S. 36 (1950)] and need not be restated here....*Id* at 93-94.

> Because the fact of mootness is clear, and indeed is relied upon by the Court of Appeals as its reason for dismissing petitioner's appeal, and because the law as laid down by this Court in *Duke Power Co* [citation omitted] and *United States v. Munsingwear, Inc.,*[citation omitted]*,* is equally clear, the petition for certiorari is granted, the judgment of the Court of Appeals is <u>vacated</u>, and the case is remanded to the Court of Appeals with directions to <u>vacate the District Court's judgment</u> and to remand the case for dismissal of respondent's complaint. *Id*.at 94. (emphasis added)

3.  **The D.C. Circuit Order, *Nelson v. Colorado*, and *Wilson* Requires Refunds for Vacated Convictions Because the Government Has Zero Rights to the Money and the Prices Have a Right to Return of the Restitution and Criminal Assessments**

It is useful to note the scope of the cases discussed under *Nelson* subject to the Due Process concerns.

> These cases, in contrast, concern the continuing deprivation of property after a conviction has been reversed or vacated, with no prospect of reprosecution.[citations omitted] *Nelson*, 581 U.S. at 135.

Notice the specific reference to "or vacated" and with no prospect of reprosecution. That statement in *Nelson* describes the instant case. The Supreme Court reasons:

> But once those convictions were erased, the presumption of their innocence was restored. See, e.g., Johnson v. Mississippi, 486 U. S. 578, 585 (1988) (After a "conviction has been reversed, unless and until [the defendant] should be retried, he must be presumed innocent of that charge.").8 "[A]xiomatic and elementary," the presumption of innocence "lies at the foundation of our criminal law." Coffin v.United States, 156 U. S. 432, 453 (1895).9 Colorado may not retain funds taken from Nelson and Madden solely because of their now-invalidated convictions, see supra, at 2–3, and n. 3, for Colorado may not presume a person, adjudge ed guilty of no crime, nonetheless guilty enough for monetary exactions.[footnote omitted] *Nelson*, 581 U.S. at 135-136.

The convictions in the instant case have been "erased" and the presumption of innocence restored.  The *Nelson* Court further speaks to whether the State has a right to retain money paid by the defendant:

> By what right does the State retain the amount paid out by the defendant? "[I]t should make no difference that the reviewing court, rather than the trial court, determined the

evidence to be insufficient." Burks v. United States, 437 U. S. 1, 11 (1978). *Nelson*, 581

U.S. at 136.

.…

Colorado has no interest in withholding from Nelson and Madden money to which the

State currently has zero claim of right. *Id*. at 139.

….To comport with due process, a State may not impose anything more than minimal

procedures on the refund of exactions dependent upon a conviction subsequently

invalidated. *Id*.

Here, the government no longer has a basis to retain the Prices' payment. The judgment that

formed the basis for the fees and restitution no longer exists. The government has "zero claim of

right." As the *Moss* Opinion states:

> The Supreme Court held that Colorado's refund law violated due process [SIC],
>
> reasoning that Colorado had "no legal right to…retain funds exacted from a defendant
>
> whose conviction had been vacated id at 132, 139, and by requiring defendants to prove
>
> their innocence, the law created an unacceptable "risk of erroneous deprivation" of
>
> defendant's property, id at 137. *Moss Opinion* at 6.

As discussed below, various courts interpret *Nelson* to apply where a Court vacates, again

based on mootness, when a person dies and appeal is pending.  In the instant case the

government sought vacatur under rule 48 (a), the Prices did not oppose, and the D.C. Circuit

issued the order to vacate the judgment.  The Prices took no action to limit their right to refund.

In the instant case, the D.C. Circuit made no statement creating a subclass of vacatur and issued a standard order vacating the judgment and remanding for dismissal. There is no legal precedent or procedural rule suggesting that an appellate vacatur of the entire judgment operates on a spectrum or admits subclasses that would retain collateral consequences. By invoking *Knote* and refusing to recognize the legal effect of vacatur, the Court has created an unauthorized exception to the appellate mandate.

### 4. Circuit Courts Provide for Return of Fees and Restitution Citing *Nelson* in Cases of Vacatur

Citing Nelson Courts of appeals have consistently recognized that when a conviction is vacated, the accompanying monetary penalties—including fines, restitution, and assessments—must also be undone. In *United States v. Ajrawat*, 738 F. App'x 136, 139 (4th Cir. 2018) The court vacated conviction, restitution, and assessments in a case rendered moot by the defendant's death during appeal. The Fourth Circuit held:

> "Nelson made 'clear the question is whether the conviction was vacated, rather than why the conviction was vacated.'" Id. at 139. [Citation omitted Nelson at 137 S. Ct at 1256 n 10.

The key in *Arjawat* is extinguishing the conviction:

> Because Ajrawat's conviction has been extinguished, the order of forfeiture and the
>
> special assessment must be abated.

In *United States v. Brooks*, 872 F.3d 78, 89 (2d Cir. 2017) the Second Circuit explained:

> …the reasoning of Nelson also compels abating monetary penalties where a defendant
>
> dies during his direct appeal, as there is no longer a valid conviction to support the
>
> government's retention of the penalty. The statutory predicate for restitution . is a

conviction, and once that conviction has been vacated—even by abatement upon the

death of the defendant—there is no longer a basis to require payment of restitution.

Id. (internal quotation marks, citation, and alteration omitted).

In *United States v. Coddington*, 802 F. App'x 373, 374 (10th Cir. 2020), the Tenth Circuit

recognized that *Nelson* requires repayment of restitution when a conviction is vacated:

> "Based on *Nelson*, the Government concedes the restitution order … must be
>
> vacated if his convictions are vacated."

In *United States v. Libous*, 858 F.3d 64 (2d Cir. 2017), the Second Circuit addressed the effect of

abatement *ab initio* following the death of the defendant during appeal. The court affirmed that

the conviction and associated financial penalties—including restitution—must be nullified and

refunded. Libous states "Because the government has no right to retain fines imposed pursuant to

a conviction that is subsequently vacated, we GRANT the motion in its entirety."

In *United States v. Decay*, 2007 WL 2302117 (E.D. La. Aug. 7, 2007), the district court held

held:

> "Since the convictions and sentences have been vacated, there is no longer a legal basis to
>
> support the collection or retention of the fine and restitution amounts previously paid by
>
> the defendant." *Id.* at *3.

**5. The D.C. Circuit in Its Reference to *Schaffer* Also Refers to Cases Focused on the *Munsingwear* Judicial Approach Regarding Mootness That Can Arise When a Case Is on Appeal—Not Any Specific Rule Regarding Pardons**

*Schaffer* is simply one example of the decision to vacate a judgment on appeal when mootness occurs, for any number of reasons. *Schaffer* states:

> When a case becomes moot on appeal, whether it be during initial review or in connection with consideration of a petition for rehearing or rehearing en banc, this court generally vacates the District Court's judgment, vacates any outstand- ing panel decisions, and remands to the District Court with direction to dismiss. See U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship, 513 U.S. 18, 25, 29 (1994); United States v. Munsingwear, Inc., 340 U.S. 36, 39 (1950); Clarke v. United States, 915 F.2d 699, 706-08 (D.C. Cir. 1990) (en banc); Flynt v. Weinberger, 762 F.2d 134, 135-36 (D.C. Cir. 1985)

Notice that neither *Schaffe*r, nor the D.C. Circuit in the instant case, evaluates the scope of, or effect of, the Presidential pardon as authority for vacating the judgment. The government in its motion argued a Presidential directive regarding enforcement policy was the basis for its Rule 48(a) motion.  As discussed above, the government explicitly states the issue is not the result of the pardon itself. Rather the case fits into the logic of *Munsingwear* where non-final judgments on appeal are vacated for lack of finality. *Schaffer* notes "[f]inality was never reached on the legal question of Schaffer's guilt." *Claiborne v. United States*, 551 U.S. 87 (2007) applies the principles of *Munsingwear* – vacatur while moot on appeal--in the criminal context as well. *See also NASD Dispute Resolution, Inc. and New York Stock Exchange, Inc. v. Judicial Council of California* 232 F. Supp. 2d 1055 (N.D. Cal. Nov. 12, 2002) aff'd, 488 F.3d 1065 (9th Cir. 2007).

When a case becomes moot on appeal, the "established practice" is to reverse or vacate the decision below with a direction to dismiss.   Arizonans for Official English v. Arizona, 520 U.S. 43 (1997) (citing *Munsingwear*).    Vacatur in such a situation "eliminat[es] a judgment the loser was stopped from opposing on direct review." *Id.* at 71.   Without vacatur, the lower court's judgment, "which in the statutory scheme was only preliminary," would escape meaningful appellate review thanks to the "happenstance" of mootness.   *Munsingwear*, 340 U.S. at 39.

The 11th Circuit has also confirmed the *Munsingwear* doctrine regarding lack of finality until appeal is exhausted. *See United States v. Local* 106 F.3d 1547, 1522 (11th Cir. 1997) ("[A] fundamental principle of our jurisprudence from which the abatement principle is derived is not final until resolution of the defendant's appeal as a matter of right."); *United States v Pauline*, 625 F. 2d 684, 685 (5th Cir. 1980)("[W]hen death had deprived the accused of his right to our decision, the interests of justice ordinarily require that he not stand convicted without resolution of the merits of his appeal, which is an integral part of our system for finally adjudicating his guilt or innocence).  (internal quotation marks, alterations, and citation omitted).  When presented with a case that is rendered moot while on appeal, appellate courts traditionally vacate the judgment below in order to wipe the slate clean and remove any precedential effect. *Md. Highways Contractors Ass'n v Maryland* 933 F.2d 1246, 1250 (4th Cir. 1991); *Troy State Univ v. Dickey* 402 F. 2d 515, 517 (5th Cir. 1968); *NASD Dispute Resolution v. Judicial Council, Cal.,* 488 F.3d 1065,1068 (9th Cir. 2007) ( "Without vacatur, the lower court's judgment, 'which in the statutory scheme was only preliminary,' would escape meaningful appellate review thanks to the 'happenstance' of mootness.") (citing Munsingwear, 340 U.S. at 39).

The Prices do not concede, and no Court or party could credibly argue, that the instant case would be moot on appeal, if the appellate case was dismissed without vacatur. An order dismissing the appeal without a statement vacating the judgment could not operate as logically moot. The *Munsingwear* approach to vacate the judgement is what achieves mootness with respect to the judgment. If the judgment were not vacated the convictions (and the fees and restitution based on those convictions) remain standing. That would be the definition of not moot and would maintain the incentive and a reason for the Prices to continue the appeal.

The government explicitly agrees that the Prices are entitled to reimbursement for the special assessment and restitution, distinguishing the facts from a pardon where there is no vacatur:

> "Here, however, the Defendants were not just pardoned. Instead, while his case was on appeal, the government moved to vacate his convictions, which the D.C. Circuit granted, and this Court subsequently dismissed the case as moot. In this unusual situation, the Supreme Court's decision in *Nelson v. Colorado*, 581 U.S. 128 (2017), controls." [ECF 175 at 3]

### 6.  The Capital Architect Fund Also Depends on Conviction Which, In the Instant Case, Does Not Exist

As directly stated in the original motion, Payments disbursed to the Architect of the Capitol, a federal agency, remain within government control. Unlike payments made to private victims, there is no equitable barrier to refund. Further, the judgments against the Prices cited 18 U.S.C. §§ 3663 and 3663A as the statutory basis for the restitution orders. These statutes authorize restitution only as part of a criminal

sentence imposed upon conviction. *See Hughey v. United States*, 495 U.S. 411

(1990). Without a valid conviction, restitution under these provisions cannot stand.

### 7. *Knote* **Is Inapplicable and Legally Distinct**

This Court's and the *Moss Opinion* reliance on *Knote* is misplaced. *Knote* did not involve

judicial vacatur of a conviction or judgment. The Prices never argued the Pardon as authority.

*Knote* addressed property confiscated during the Civil War and whether a pardon reinstated

property rights after sale. The Supreme Court found that the pardon alone could not unwind

property transactions or confer new rights to Treasury funds. But *Knote* did not claim to impact a

Circuit Court order to the vacate the judgment. Such an order nullifies legal impact as if the

judgment never existed. Moreover, *Knote* pre-dates the modern understanding of due process as

elaborated in *Nelson* related to vacatur. *Knote* holding does not and cannot override the

constitutional imperative established in *Nelson* and other case law. K*note* predates modern due

process jurisprudence and was decided in an era before the expansion of constitutional

protections under the Fourteenth Amendment. It predates the Federal Rules of Criminal

Procedure, the Administrative Procedure Act, and the Judgment Fund statute—all of which

shape modern refund practice.

This Court's opinion and the Moss Opinion creates a fundamental legal obstruction by

failing to acknowledge the entitlement of the Prices to the money they paid for which the

government now has "zero right". *Wilson* also governs. In *Wilson*, the D.C. Circuit held that a

defendant is entitled to fines paid when the legal basis no longer exists. The timing parameter

claimed in *Knote*—that money paid before a pardon—is not relevant because vacatur removes all

legal basis.  Vacatur is an Article III action with legal impact different from a pardon.  Here is the erroneous framework the *Moss Opinion* advocates:

> The Court is unpersuaded that *Nelson* applies in the present context. *Nelson* had nothing to do with the scope of the pardon power or the Appropriations Clause…. It is true that Vargas's conviction was vacated, but that alone does not trigger *Nelson*'s rule. The Court's power to order a refund does not turn on whether a defendant's conviction was vacated or not; it turns on whether the defendant is *entitled* to funds that were deposited into the U.S. Treasury before the pardon was granted. As *Knote* made clear, a pardoned individual is not "entitle[d]" to payments that have already been deposited into the United States Treasury, absent congressional authorization to withdraw the funds. *Knote*, 95 U.S. at 152; *see also In re North*, 62 F.3d 1434, 1435 (D.C. Cir. 1994) ("[The Appropriations Clause] is a restriction on the power of the President to grant pardons.").

The scope of the Pardon power is not relevant to the motion brought by the Prices.  The rule flows from D.C. Circuit action– an Article III court exercising Article III power—vacating the judgment.  The D.C. Circuit followed and implemented the *Munsingwear* line of cases, which is a creation of Article III courts to address the circumstances of non-final actions where a party is on appeal.  All of these cases have the same basic formula.  Whether it is death, a pardon, or any other reason that creates mootness issues, a Circuit Court can and, mostly will, turn to *Munsingwear* and resolve the case by vacating the judgment. A person does not vacate a conviction due to dying or a pardon.  But a Circuit court may vacate a conviction if the party was on appeal and there was no final decision.  *Schaffer*, and instant case, is just another example of that.  Nothing in *Schaffer* or any other case suggests a vacatur has a different legal effect for a

*Munsingwear* case involving a pardon. The Prices have no opinion whether the *Munsingwear* approach should apply in is case. The D.C. Circuit ruled and vacated the entire judgment. It is not for this court to question the reason or create a second class vacatur with different legal effects. No procedural label—pardon, clemency, or otherwise—can strip a person of the right to recover funds taken under a judgment that no longer exists.

What is entirely confusing is why the Court's opinion or the Moss opinion assumes the rules that apply to the Pardon Power, or the pardon itself, limit the rules of the Article III vacatur of judgment. For purposes of the point, assume the pardon power cannot vacate a judgment or the pardon did not vacate the judgment. Based on the Court's erroneous reasoning, why does that limitation, either on the scope of the pardon power or on scope of the pardon itself, also not limit the authority of the D.C. Circuit to vacate the conviction? *Nelson* and every other case cited below equates vacating the judgment with a right to return of fees that were based on the judgment.

In addition, there is no legal basis for the proposition that an Article II pardon limits the benefit to the Prices of an Article III vacatur. The Pardon power does not provide the President the power to convict or vacate a conviction. The fact of a pardon does not give a district court the authority the claim some sort of vacatur/pardon hybrid.

The D.C. Circuit's vacatur of the judgment was a standard exercise of its judicial authority under 28 U.S.C. § 2106, which empowers appellate courts to "affirm, modify, vacate, set aside or reverse any judgment, decree, or order" of a lower court. The Appellate Court's action carried the full legal consequence of vacatur: the judgment ceased to exist, and no further penalty or legal disability could rest on it.

To hold otherwise introduces a dangerous fiction. This position defies precedent, undermines the finality of appellate mandates, and violates Due Process under *Nelson,* the general rule in *Wilson*, and the principles articulated in Hewitt.  There is no remaining basis for any party including the courts or government to consider there to be ANY legal negative ramification flowing from the vacated judgment.

**F. The Government Supports Refund and Identifies a Refund Mechanism**

The Court opinion points to no distinction in appropriations law or administrative routing that would preclude refund. Counsel emphasized that vacatur is a judicial act that nullifies the underlying conviction and restores the presumption of innocence, and the government identified no limitations in law that would prevent the return of funds. The Court has not addressed or admitted the fundamental point that there is a normal path for return of fees and restitution. Without it, the judicial system would be routinely denying relief in ordinary cases of vacatur including those with reversals.  No separate act of Congress is required. While the exact refund mechanism may vary, the government always returns the funds. That is the natural legal consequence of a vacated judgment. To claim otherwise defies institutional reality and invites the Court to ignore a routine feature of criminal appellate procedure.

In its supplemental response in Vargas  [Vargas ECF 110], the government identifies 31 U.S.C. § 1322(b)(2)—which authorizes refunds of "amounts erroneously received"—as a valid statutory basis for return. This statute functions as an indefinite appropriation, meaning no new act of Congress is required. Further, where needed, 31 U.S.C. § 1304 (the Judgment Fund) may provide a backstop. The federal government must have well-established statutory mechanisms to

return money when a conviction is vacated. The government's own filings admit this. (ECF 107, 110).

The Court has a duty to help ensure that property is restored to the defendant once the basis for its retention is eliminated. The Court is not powerless in the face of bureaucratic uncertainty—it must ensure justice is done. If more information is needed from the government, the Court can and should demand it. If the specific pathway requires clarification, the Court should direct further response. But for now, this Court's legal interpretation on substance stands in the way. Moreover, the Prices request for relief was broadly stated with respect to bureaucracy:

> "The Clerk of Court, or any agency or entity of the United States that has received restitution, fine, or criminal assessments…" [ECF 173 at 3] …"Ordering the United States to take all necessary steps to effectuate the return of these funds to Defendants" *Id. See also* text or proposed order {ECF 173-5}

That relief was deliberately broad to account for the reality that the Clerk might not control the funds and to ask the United States to take whatever steps were necessary to return the unlawfully retained property. In this motion to reconsider the Prices state a slightly broader expression of this point.

## G.    The Court's Opinion Violates the Takings Clause

The Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." This constitutional protection applies to both real and personal property, including monetary fines paid to the government. In

*United States v. Wilson*, 540 F.2d 1100, 1103–04 (D.C. Cir. 1976), the court treated paid criminal fines as property that must be returned upon a successful challenge to the conviction, affirming that the government has no entitlement to retain funds collected under an invalidated judgment.

In *Tyler v. Hennepin County*, 598 U.S. 631 (2023), the Supreme Court reinforced the principle that "a taxpayer is constitutionally entitled to the return of excess value in property taken to satisfy a debt." The Court found a Takings Clause violation where the government retained surplus proceeds from a tax sale, stating that the government cannot "confiscate more than it is owed."

In *Tyler*, a Minnesota property owner accrued about $2,300 in unpaid taxes and $13,000 in interest and fees. The applicable statute in effect in Minnesota allowed Hennepin County to obtain a judgment against the property owner after the taxes were delinquent for over a year. The judgment gave the property owner three years to redeem the property by paying all the back taxes.

After the end of the three-year redemption period, title to the property vested in the County because the taxpayer failed to pay back taxes of $15,300. The County thereafter sold the property for $40,000. The Minnesota statute authorized the municipality to retain the approximately $25,000 in surplus.

Chief Justice Roberts, writing for a unanimous Court, noted the history and principles of property law dictate government cannot take more from an owner than what is due. Otherwise, it amounts to a "classic taking in which the government directly appropriates private property for

its own use[,] [Footnote omitted] violating the takings clause. The Court noted the County had the power to sell the property for the unpaid taxes. The constitutional problem was that Minnesota's statute did not provide the former property owner with opportunity to obtain the surplus monies after the transfer of title.

## III. Conclusion

The Court's June 27, 2025 Order must be reconsidered. The denial of refund relief disregards the D.C. Circuit's mandate, misapplies precedent, and violates due process. The law is clear: vacatur nullifies the judgment, and the government may not retain funds exacted under it. The Court has, in effect, constructed a second-class vacatur and a barrier to constitutional restoration that directly contradicts the Supreme Court guidance. The legal basis for fines and restitution has been nullified. Retention of these funds violates the Due Process Clause, contradicts the clear mandate of *Nelson*, and imposes punishment without conviction.

**THEREFORE**, The Prices respectfully requests that the Court:

- Grant this Motion for reconsideration;

- Vacate the June 30, 2025 Order [ECF 176];

- Direct the Clerk of Court, or any appropriate agency or entity of the United States to return the $1140 ($570 per defendant) that the Prices are entitled, and for the United States to take any additional inquiry or steps to facilitate the return of such funds to the Prices.

Respectfully submitted,

/s/ Nandan Kenkeremath

Nandan Kenkeremath (DC Bar 384732)
2707 Fairview Court
Alexandria, VA 22311
703-407-9407