UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CYNTHIA BALLENGER, *et al.*,<br><br>Defendants. | Criminal Action No. 21-719 (JEB) |

**MEMORANDUM OPINION**

Cynthia Ballenger and her husband Christopher Price joined the insurrection at the U.S. Capitol on January 6, 2021. They were tried on various misdemeanor charges, convicted, and ordered to pay an assessment and restitution. Both paid their penalties, then appealed their convictions. While those appeals were pending, President Donald Trump pardoned both Defendants, mooting their appeals and so causing their convictions and sentences to be vacated. Ballenger and Price thus moved this Court to order the Government to return their payments. The Court denied the motion, and Defendants now ask the Court to reconsider. Having viewed the question afresh, the Court now agrees with Defendants. When a conviction is vacated, the Government must return any payments exacted because of it. Neither the Appropriations Clause nor sovereign immunity bars that repayment.

**I.     Background**

Ballenger and Price were both convicted of four misdemeanors stemming from their participation in the Capitol riot. See ECF Nos. 121 (Price PSR), ¶¶ 4, 7, 10–21, 88–91; 123 (Ballenger PSR), ¶¶ 4, 7, 10–21, 87–90. The Court sentenced them to a short term of imprisonment and ordered each to pay the mandatory $70 assessment plus $500 in restitution to

1

the Architect of the Capitol. See ECF Nos. 138 (Ballenger Jmt.) at 3, 8; 140 (Price Jmt.) at 3, 8. Defendants duly paid.

Then they appealed. See ECF Nos. 148 (Ballenger Notice of Appeal); 149 (Price Notice of Appeal). While those appeals were pending, Trump "grant[ed] a full, complete and unconditional pardon to all . . . individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021" — including Ballenger and Price. See Proclamation No. 10887, 90 Fed. Reg. 8331, 8331 (Jan. 20, 2025). The pardon rendered their appeals moot. When a pardon moots a pending appeal, the D.C. Circuit vacates the defendant's conviction and sentence. United States v. Schaffer, 240 F.3d 35, 38 (D.C. Cir. 2001) (*en banc*). The panel therefore vacated this Court's judgment and remanded with instructions to dismiss, which this Court did. See ECF Nos. 171-1 (Ballenger Mandate); 172-1 (Price Mandate); Minute Order of Feb. 5, 2025.

Yet Ballenger and Price insisted that because the order to pay assessments and restitution had been vacated, they should get their money back. See ECF No. 173 (Mot. for Refund). They sought such relief from this Court, and the Court denied their motion. See ECF No. 176 (Denial of Refund). They now move for reconsideration. See ECF No. 177 (Mot. for Recons.).

## II. Analysis

"To prevail on a motion for reconsideration, the moving party must demonstrate either that (1) there has been an intervening change in controlling law, (2) there is new evidence, or (3) there is a need to correct clear error or prevent manifest injustice." United States v. Booker, 613 F. Supp. 2d 32, 34 (D.D.C. 2009). Here, Defendants argue that the Court erred — principally because it held that Defendants' pardon does not entitle them to a refund, without

considering whether the resulting vacatur of their convictions does.  See Mot. for Recons. at 7–25.

With the question framed more precisely, the Court has come around.  In this Opinion, it first addresses whether a defendant has a right to get back any payments imposed because of a conviction that has been vacated.  The Court then asks whether, if Defendants here have a right to those refunds, Congress has authorized paying them.  Finally, it considers whether the federal Government's sovereign immunity bars the claim.

A.  Pardons and Vacatur

As the Court previously held, a pardon does not entitle someone to recover property that she lost because of the pardoned conviction.  Knote v. United States, 95 U.S. 149, 153–54 (1877); Ex parte Garland, 71 U.S. (4 Wall.) 333, 380–81 (1866).  Instead, a pardon gives only prospective relief: if the pardon is preemptive, then its recipient cannot be prosecuted for the pardoned offense, In re Aiken County, 725 F.3d 255, 263 n.6 (D.C. Cir. 2013); if she has already been convicted and sentenced, then the pardon means that she gets out of jail.  Pardons do not look backward to unwind past punishment.  A pardoned offender does not get compensation for time that she served, nor does she get back any fines that she paid.  Knote, 95 U.S. at 153–54.  A pardon does not even undo the defendant's conviction, which remains on her record and is not expunged.  In re North, 62 F.3d 1434, 1437 (D.C. Cir. 1994); United States v. Noonan, 906 F.2d 952, 960 (3d Cir. 1990).  By itself, Defendants' pardon therefore cannot unlock the retroactive return of their payments that they ask for here.

But because this pardon arrived while Defendants' appeal was pending and thereby mooted their appeal, it caused their convictions to be vacated.  So even if Defendants' pardon does not entitle them to refunds, the resulting vacatur of their convictions might.

The Government needs a legal basis for taking and continuing to hold its citizens' property. Here, it was entitled to Defendants' assessments and restitution only because a judgment of this Court ordered Defendants to make those payments. "Absent [Defendants'] convictions," the United States "would have no legal right to exact and retain [their] funds." Nelson v. Colorado, 581 U.S. 128, 132 (2017).

When that order was vacated, the legal basis for holding Defendants' money vanished. "[V]acated court orders are void *ab initio*," and so "the law acts as though the vacated order never occurred." Hewitt v. United States, 606 U.S. 419, 431 (2025). In plain English, vacatur — unlike a pardon — "wholly nullifie[s]" the vacated order and "wipes the slate clean." Id. at 432 (cleaned up). A defendant whose conviction was vacated therefore holds the same legal status as a defendant who was never convicted in the first place. Id. at 431–32. After vacatur, then, the Government has no legal ground for keeping Defendants' money and must return it.

True, Defendants' convictions have never been found legally defective, but "vacatur's effects do not turn on the reason behind the vacatur." United States v. St Cyr, 2025 WL 2466044, at *4 (D.D.C. Aug. 27, 2025); cf. Nelson, 581 U.S. at 136 n.10 ("reversal is reversal, regardless of the reason") (quotation marks omitted).

Take a more common situation: when a defendant is convicted, appeals, and dies while his appeal is pending. His death renders the appeal moot and so causes his conviction to be vacated. United States v. Pogue, 19 F.3d 663, 665–66 (D.C. Cir. 1994). After those vacaturs, must the Government return any penalties to the estate of the deceased defendant? Every circuit that has considered the question has answered yes. See United States v. Reynolds, 98 F.4th 62, 72 (1st Cir. 2024); United States v. Brooks, 872 F.3d 78, 89–90 (2d Cir. 2017); United States v. Est. of Parsons, 367 F.3d 409, 413–16 (5th Cir. 2004) (*en banc*); United States v. Volpendesto,

4

755 F.3d 448, 454 (7th Cir. 2014); United States v. Rich, 603 F.3d 722, 728–29 (9th Cir. 2010); but see United States v. Christopher, 273 F.3d 294, 297–99 (3d Cir. 2001) (holding that when defendant dies while appeal is pending, Government must return criminal fines but need not return restitution meant to compensate victims).  That situation is just like the one here: in both cases, the defendants were convicted and appealed; then an event that had nothing to do with the conviction's merits — there, an ill-timed death; here, a luckily timed pardon — rendered the appeal moot.  If those deceased defendants are entitled to refunds, these pardoned defendants must be, too.

Indeed, those circuits' rationales for repaying the estates of deceased defendants would apply to repaying a defendant whose appeal was mooted by a pardon.  Those circuits explain that when mootness prevents a conviction from being tested on appeal, courts cannot have enough confidence in it to let the Government keep any resulting penalties.  Reynolds, 98 F.4th at 68–70; Brooks, 872 F.3d at 87–88; Est. of Parsons, 367 F.3d at 413–15; Volpendesto, 755 F.3d at 453; Rich, 603 F.3d at 729.  As the Fifth Circuit put it, "[T]he interests of justice ordinarily require that [a defendant] not stand convicted without resolution of the merits of his appeal, which is an integral part of our system for finally adjudicating his guilt or innocence."  Est. of Parsons, 367 F.3d at 413–14 (cleaned up).  If that appeal was never decided, then the Government may not "enjoy the fruits of an untested conviction."  Id. at 414.  That is exactly how the D.C. Circuit describes convictions that are vacated because a pardon mooted the appeal: "Final judgment never has been reached on" the validity of the defendant's conviction "because the appeals process was terminated prematurely."  Schaffer, 240 F.3d at 38.  The defendants' guilt or innocence thus "remains only an unanswered question lost to . . . mootness."  Id.

5

Defendants tried to test their conviction on appeal and could not. The criminal-justice system therefore cannot have enough confidence in those convictions to let them stand. Id. *A fortiori*, it cannot continue to deprive Defendants of the money those now-vacated convictions forced them to pay.

### B. Appropriations Clause

Just because Defendants have an abstract right to refunds, however, does not mean that this Court has the power to award them. The Constitution's Appropriations Clause prohibits any money being "drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. Once a judgment has "been paid into the treasury," then, it "can only be" returned "through an act of Congress." Knote, 95 U.S. at 154; see also Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 93–94 (1992) (Rehnquist, C.J., delivering opinion of the Court) (reiterating this rule long after Knote). Does any statute authorize the Government to refund Defendants' payments here?

Until recently, courts in this district answered no. United States v. Sullivan, 783 F. Supp. 3d 385, 393–94 (D.D.C. 2025); United States v. Vargas, 789 F. Supp. 3d 60, 65–66 (D.D.C. 2025); United States v. Hager, 2025 WL 1886135, at *2 (D.D.C. July 3, 2025); United States v. Sutton, 2025 WL 2149396, at *2 (D.D.C. July 15, 2025). Yet in a thoughtful recent opinion, Judge John Bates disagreed. St Cyr, 2025 WL 2466044, at *7.

This Court reaches the same result as Judge Bates, albeit via a different route. It first notes that a statute, 31 U.S.C. § 1304, authorizes the United States to pay judgments issued against it. It then determines that Defendants are entitled to such a judgment here: as discussed above, when an order is vacated, parties have a right to recover money that the order made them pay. In turn, under a longstanding rule of equity, courts have the power to order those payments

6

returned. Issuing that order creates a judgment in favor of Defendants against the United States. That judgment then triggers § 1304, allowing the Government to pay Defendants. The Appropriations Clause is therefore satisfied.

        1. *Judgment Fund*

Title 31 U.S.C. § 1304 declares, "Necessary amounts are appropriated to pay final judgments" against the United States. That statute is an "act of Congress," Knote, 95 U.S. at 154, authorizing money to be "drawn from the Treasury," U.S. Const. art. I, § 9, cl. 7 — so long as a party has an independent means of securing that judgment.

That last point is key. Section 1304 applies only at the last step of an action: paying a judgment that a party has won. Before reaching this statute, the party must first have an independent right to compensation and a way to turn that right into a court order requiring the Government to pay him. United States v. Testan, 424 U.S. 392, 401–02 (1976); OPM v. Richmond, 496 U.S. 414, 432 (1990) ("A law that identifies the source of funds is not to be confused with the conditions prescribed for their payment."). That order then creates a judgment in his favor, and only then does § 1304 authorize payment.

For the reasons discussed above, Defendants have a right to compensation here. But does this Court have the power to issue a judgment enforcing that right?

        2. *Returning Vacated Judgments*

Yes. While mass pardons of defendants with pending appeals might be a novel fact pattern, the legal position in which Defendants find themselves is hardly new. Litigants have long paid judgments, then gotten those judgment reversed or vacated on appeal. Suppose that Defendants had not been pardoned but instead had won their appeal because there was insufficient evidence to convict or because the statute under which they were convicted was

unconstitutional. In that more familiar situation, the Government would hold their money yet plainly have no right to keep it. Nelson, 581 U.S. at 136. That frequent conundrum produced a now-longstanding solution: courts have the power to undo their judgments that were reversed or vacated, restoring any payments that the now-void judgment forced a party to make. E.g., Nw. Fuel Co. v. Brock, 139 U.S. 216, 219 (1891); Nelson, 581 U.S. at 142–43 (Alito, J., concurring in the judgment). That practice was developed by English courts, Nw. Fuel, 139 U.S. at 219, traveled to the Colonies, and matured into a principle of equity repeatedly endorsed by the Supreme Court. E.g., Bank of U.S. v. Bank of Wash., 31 U.S. (6 Pet.) 8, 17 (1832); Nw. Fuel, 139 U.S. at 219; Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co., 249 U.S. 134, 145 (1919); Balt. & Ohio R.R. Co. v. United States, 279 U.S. 781, 786 (1929); Atl. Coast Line R.R. Co. v. Florida, 295 U.S. 301, 309–10 (1935); United States v. Morgan, 307 U.S. 183, 197 (1939). While the cases applying that rule are old, the principle remains good law, as the Court now explains.

When a court orders one party to pay another and that judgment is reversed, the party who was deprived of his property "is entitled . . . to be restored by his adversary to that which he has lost" because of the now-reversed judgment. Arkadelphia, 249 U.S. at 145; accord Nw. Fuel, 139 U.S. at 219. The Supreme Court has found this rule "so clearly consistent with the principles of equity" that its availability "goes without saying." Arkadelphia, 249 U.S. at 145; see also Balt. & Ohio, 279 U.S. at 786 ("The right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established.").

Courts have therefore long restored payments that a party made because of a judgment that was reversed on appeal. While a court's failure to order the party who prevailed below to return those payments can give rise to an action for unjust enrichment against that party, see

Restatement (Third) of Restitution and Unjust Enrichment § 18 (A.L.I. 2024), the victor on appeal need not launch a separate suit invoking a freestanding cause of action. Instead, courts can simply undo previous orders as part of the ordinary process of deciding appeals or disposing of the case on remand. Nw. Fuel, 139 U.S. at 219. As the Supreme Court explained, "[T]he power is inherent in every court . . . to undo" its prior order and thus "to restore, so far as possible, the parties to their former position . . . either in the first instance or when remanded to it by an appellate tribunal." Id.; accord Morgan, 307 U.S. at 197. Restoring payments made under a reversed order is often a component of the reversal itself, a knock-on step to give the reversal complete effect. For instance, appellate courts would sometimes direct restitution as part of their order reversing the judgment below. Nw. Fuel, 139 U.S. at 221 (discussing nineteenth-century case). Even if the appellate judgment does not include a restitution order, the trial court can issue one on remand, even if it otherwise lacks jurisdiction to decide the case. Id. at 219. While these refunds are discretionary — courts issue them only when consistent with equity and good conscience, Atl. Coast Line, 295 U.S. at 309–10 — they are always within a court's power. Nw. Fuel, 139 U.S. at 219.

      That principle applies equally to judgments that have been vacated. The reason why courts order a party to return a judgment that was reversed on appeal is that the party is holding money that is not rightfully hers, so the court must undo its prior judgment to avoid unjustly enriching someone. Bank of U.S., 31 U.S. (6 Pet.) at 17. For the reasons laid out in the previous section, the vacatur of Defendants' convictions put these parties in that same position. A judgment of this Court ordered Defendants to pay the Government, it is now holding their money, and it may not rightfully keep it. Faced with that situation, courts have long held the power to order the money restored. And undoing the effect of a vacated judgment, like undoing

the effect of a reversed one, does not require a new action but is instead an incidental consequence of the vacatur. United States v. Lewis, 478 F.2d 835, 836 (5th Cir. 1973) (after unconstitutional conviction was set aside, district court could "correct the unlawful result of the conviction and require the repayment of the money collected as fines . . . without requiring the bringing of another action").

Attentive readers have no doubt spotted that all the cases discussed above are civil. Yet the rule extends to criminal cases, too. Id.; Nelson, 581 U.S. at 142 (Alito, J., concurring in the judgment). A reference article distilled the criminal caselaw as follows: "When a judgment imposing a fine, which is paid, is vacated or reversed on appeal, the court may order restitution of the amount paid . . . ." Right to Recover Back Fine or Penalty Paid in Criminal Proceeding, 26 A.L.R. 1523, § VI(a) (1923).

Put it all together, and because this Court's order was vacated on appeal, the Court has the power to order the Government to return Defendants' money. Now add that power to the discussion in previous sections of this Opinion. Because Defendants' convictions were vacated, they have a substantive right to get their money back. This Court can enforce that right by directing the United States to return Defendants' payments. When it does, the Court creates a valid judgment in favor of Defendants. And once that judgment exists, § 1304 authorizes the United States to pay it. The Appropriations Clause is therefore satisfied.

C. Sovereign Immunity

Still, the federal Government cannot be sued for money without its consent. United States v. Navajo Nation, 556 U.S. 287, 289 (2009). While the Government has not raised this argument here, it cannot waive its sovereign immunity through litigation conduct. Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1105 (D.C. Cir. 2005). That intact sovereign immunity is a bar

to this Court's subject-matter jurisdiction, so the Court must consider it *sua sponte*. FDIC v. Meyer, 510 U.S. 471, 475 (1994).

The Court may plainly adjudicate Defendants' prosecution. Sovereign immunity might prevent them from suing the Government without its consent, but this case arose because it was the Government that went after Defendants.

Resolving the prosecution includes refunding Defendants' payments. The prosecution included Defendants' appeal, which in turn included the Circuit's vacatur. An incidental consequence of the vacatur is undoing the vacated judgment. Lewis, 478 F.2d at 836 (repaying fine from vacated conviction is "an incident to the vacating and setting aside of the conviction"); Nw. Fuel, 139 U.S. at 221 (discussing cases where appellate court ordered restitution as part of its resolution of appeal); State v. Danielson, 809 P.2d 937, 941 (Alaska Ct. App. 1991) (when defendant's criminal fine was vacated and he sought refund, that motion was "a component part of the original criminal case" and so did not run afoul of state's sovereign immunity); Ex parte McCurley, 412 So.2d 1236, 1237–38 (Ala. 1982) (similar). Perfecting the vacatur by undoing the vacated judgment is part of fully adjudicating the Government's case.

Because the Court could order Defendants to pay assessments and restitution, it can order those payments reversed. Those are two sides of the same action, and sovereign immunity does not stand in the way.

## III. Conclusion

Defendants have a right to refunds, and neither the Appropriations Clause nor the Government's sovereign immunity bars payment. The Court will therefore refund Defendants' assessments and restitution. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: December 3, 2025